IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LAURE ANN KEFFER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 7:11cv478 |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner, | ) | By: Hon. Robert S. Ballou |
| Social Security Administration, | ) | United States Magistrate Judge |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Laure Ann Keffer ("Keffer") filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433.

This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued the issues. The case is ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, the argument of counsel, and the applicable law. I conclude that substantial evidence supports the Commissioner's decision. Accordingly, I **RECOMMEND DENYING** Keffer's Motion for Summary Judgment (Dkt # 18), and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt # 16).

**I.**

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that the claimant failed to demonstrate that she was disabled under the Act. Substantial evidence is such "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Keffer bears the burden of proving that she suffers under a disability as that term is interpreted under the Act. *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education, and work experience. *See* 42 U.S.C. § 423(d)(2).

The Commissioner uses a five-step process to evaluate a disability claim. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals

2

the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. *Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983); *Johnson v. Barnhart*, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975).

## II.

### Social and Vocational History

At the date last insured, September 30, 2009, Keffer was forty-seven years old, making her a "younger person" under the applicable regulations. (Administrative Record, hereinafter "R." 36, 148.) 20 C.F.R. § 404.1563(c). Keffer graduated from high school. (R. 36.) She has past relevant work as an office manager, (R. 19, 151-53), but last worked in 2008 as a housekeeper for a bed and breakfast, a position she left because the pain from her rheumatoid arthritis prevented her from working. (R. 38.)

Keffer reported that, on a good day, she was able to do general household chores, do laundry, straighten up the house, cook, buy groceries with help from her family, feed her dogs, drive, and manage her money. (R. 190-93.) She reported that when she has a flare-up of her rheumatoid arthritis, she is "unable to do even simple things" and stays off her feet. (R. 190.) Keffer testified at her hearing before the ALJ that her daily activities include doing laundry with

3

her husband's help, cooking two to three times per week, grocery shopping with her husband's help, and driving when her hands were not inflamed from her rheumatoid arthritis. (R. 41-2.) Keffer testified that she has a great deal of pain in her hands and feet and has to lie down every day for an hour or two at a time. (R. 42-3.) She also testified that she has flare-ups that cause her to have to stay in bed seven to ten days per month. (R. 53.)

**Claim History**

Keffer filed her application for DIB on September 30, 2008, claiming disability since September 1, 2008, due to left temporomandibular joint disorder ("TMJ"), fibromyalgia, rheumatoid arthritis, osteoporosis, asthma, and a hysterectomy. (R. 139-42, 163.) The relevant time period for determining whether Keffer is disabled is between September 1, 2008, the date of alleged disability onset, to September 30, 2009, her date last insured. (R. 11.) The Commissioner initially denied her claim on April 30, 2009, and again upon reconsideration on November 30, 2009. (R. 67-68.) The ALJ held a hearing on Keffer's appeal on February 8, 2011. Keffer appeared at the hearing represented by counsel, and a vocational expert testified at the request of the Commissioner. (R. 26-60.)

The ALJ issued a decision denying Keffer's claim on March 11, 2011. (R. 21.) The ALJ found that Keffer had the severe impairments of rheumatoid arthritis, fibromyalgia, a history of left wrist surgery in mid-2009, chronic pain, and a history of asthma/chronic obstructive pulmonary disease. (R. 13.) The ALJ found that none of these impairments met or medically equaled a listed impairment. (R. 15.) The ALJ found that Keffer had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1527(a), with the limitations that Keffer could only perform tasks that required occasional use of her hands and must avoid concentrated exposure to respiratory irritants. (R. 17.) Although Keffer was unable to perform any past relevant work, the

4

ALJ found, based on the testimony of the vocational expert, that she could perform work that exists in substantial numbers in the national economy and, therefore, was not disabled. (R. 19-20.) On August 5, 2011, the Social Security Administration Appeals Council denied Keffer's request for review of the ALJ's decision. (R. 1.) Keffer then filed her complaint in this court seeking judicial review of the ALJ's decision.

## III.

### ALJ's Credibility Determination

Keffer first argues that the ALJ erred in finding her subjective complaints of the intensity of her pain and the extent of her limitations only partially credible. The ALJ determines the facts and resolves inconsistencies between a claimant's alleged impairments and her ability to work. *See Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). The regulations dictate how the ALJ is to evaluate a claimant's subjective symptoms, including pain. 20 C.F.R. § 404.1529. The ALJ must examine all of the evidence, including the objective medical record, and determine whether the claimant has met her burden of proving that she suffers from an underlying impairment which is reasonably expected to produce her claimed symptoms. *Craig v. Chater*, 76 F.3d 585, 592-93 (4th Cir. 1996). Then the ALJ evaluates the intensity and persistence of the claimant's claimed symptoms and the affect those symptoms have on her ability to work, *Id*. at 594-95, based on both the subjective statements of the claimant, and the medical record as a whole, including all relevant medical opinions. 20 C.F.R. § 404.1529.

Keffer argues that the Fourth Circuit does not require objective medical evidence to prove the severity of her pain. *See Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). The regulations provide that objective medical evidence "is a useful indicator to assist [the Commissioner] in making reasonable conclusions about the intensity and persistence of [the

5

claimant's] symptoms and the effect those symptoms, such as pain, may have on [the claimant's] ability to work."  20 C.F.R. § 404.1529(c)(2).  Of course, the ALJ may not reject the claimant's subjective statements regarding pain solely because the objective medical evidence does not support her statements.  *Id.*  But the ALJ is not required to accept the claimant's subjective statements at face value either.  The ALJ must examine all of the evidence, including the objective medical record, and determine whether Keffer has met her burden of proving that she suffers from an underlying impairment which is reasonably expected to produce her claimed symptoms alleged.  *Craig v. Chater*, 76 F.3d 585, 592-93 (4th Cir. 1996).  To the extent statements about the intensity, persistence, or functionally limiting effects of the claimed symptoms are not supported by the objective medical evidence, the ALJ must make a credibility determination and decide what weight to give the claimant's subjective complaints and their effect upon Keffer's ability to work.  *Craig v. Chater,* 76 F.3d at 594-95;  s*ee Chapman v. Astrue*, No. 1:11CV00046, 2012 WL 569902, at *5 (W.D. Va. Feb. 22, 2012).  This assessment requires the ALJ to evaluate the intensity and persistence of the claimed symptoms

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions.  *See Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight).  In this case, the ALJ found that Keffer had medically determinable impairments that could reasonably be expected to produce the symptoms alleged, but that Keffer's statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent they were inconsistent with the ALJ's RFC determination.  (R. 18.)

Substantial evidence in the record supports the ALJ's determination that Keffer's testimony regarding her disabling pain was only partially credible is supported by the record. The ALJ first considered the objective medical evidence, in particular the fact that prior to Keffer's date last insured, "objective findings and the progress notes of treating physicians show essentially normal physical exams." (R. 19.) Keffer was diagnosed with rheumatoid arthritis, both before and during the relevant time period. (R. 234, 267.) However, a diagnosis does not equate with disabling limitations or pain. In fact, the medical records during Keffer's relevant time period do not suggest that her rheumatoid arthritis was so debilitating as to preclude her from work. As the ALJ noted, January 2008 X-rays of Keffer's hands showed no evidence of rheumatoid arthritis, and images of her feet showed no evidence of erosive arthritis. (R. 237-38.) In May 2008, an examination at Medical Associates of Southwest Virginia ("Medical Associates") showed synovial cysts on her right and left feet, but no joint swelling and no muscle weakness or atrophy. (R. 246.)

In November 2008, Garry E. Bayliss, M.D. diagnosed Keffer with rheumatoid arthritis and prescribed Plaquenil and Predinisone for her symptoms. (R. 267.) Dr. Bayliss strongly urged Keffer to cease smoking. Keffer opted not to take Methotrexate at that time. *Id.* In December 2008, Michael Payne, M.D. at Medical Associates confirmed Keffer's diagnosis of rheumatoid arthritis and fibromyalgia, noting only mild degenerative changes without disc herniation in her cervical spine MRI. (R. 272-73, 350.)

The remainder of medical records prior to and during the relevant period concerns a wrist fracture that Keffer sustained in June 2009. (R. 300.) Keffer underwent surgery, (R. 307.), and a follow-up examination showed that the fracture healed well with no significant degenerative changes secondary to the fracture, and good alignment. (R. 309.)

Medical evidence after September 30, 2009, does not show that Keffer suffered disabling pain associated with her rheumatoid arthritis. Between December 2008 and January 2010, Keffer's medical records indicate that she sought medical attention solely for her wrist and not for any increasing rheumatoid arthritis pain. (R. 272-89, 300-11, 334-7.) Brian A. Torre, M.D., examined Keffer in January 2010 at the request of her rheumatologist, Dr. Bayliss. (R. 375.) Keffer told Dr. Torre that, since her wrist fracture, she had good wrist and finger motion back and had slight residual pain, but had lost extension of the IP joint of her left thumb. *Id.* Dr. Torre noted that Keffer's other fingers were intact and that Keffer reported no significant numbness or tingling. *Id.* Keffer had good range of motion of her neck and upper extremities with no pain or paresthesias and no edema. *Id.*

In January 2010, Keffer saw her rheumatologist, Dr. Bayliss, who found that she had moderate pain in her hands and feet. (R. 369.) Keffer's medication at that time included Flexeril, Lopressor, Lortab, and Prednisone. Dr. Bayliss started Methotrexate for the pain symptoms. *Id.* Keffer saw Dr. Bayliss in October 2010 for "increasing rheumatoid arthritis activity. Dr. Bayliss prescribed Lortab for pain, decreased the Prednisone, continued the Plaquenil, and began Cymbalta. (R. 369.) Dr. Bayliss again, strongly urged cessation of smoking.

In January 2011, Keffer saw Dr. Payne, for an annual physical, who noted that she was not in distress and her general appearance was good. (R. 342.) Dr. Payne's examination showed that Keffer had a full range of motion of all her extremities, normal hips and knees, her hands and wrists were non-tender, her ankles and feet were normal, she had no edema in her extremities, and her neurological exam was normal. (R. 342-3.)

8

The ALJ decision to find Keffer's testimony is supported by the objective medical evidence in the record. Keffer did not seek medical attention often for the pain associated with her rheumatoid arthritis and when she did, Dr. Bayliss's treatment was conservative and routine. The ALJ did not reject Keffer's statements based only on the fact that they were not supported by the objective medical evidence. The ALJ also considered Keffer's inconsistent work history, which contradicted her statements that she had worked hard all her life. 20 C.F.R. § 404.1529(c)(3). In fact, the ALJ noted that her work history "does not show continuous earnings, and frequently her earnings were below the level of substantial gainful activity." (R. 19.) Finally, the ALJ considered the medical opinions of the two state agency physicians who, on reviewing the record, concluded that Keffer could be able to perform a limited range of sedentary work.[1] (R. 19, 290-94, 313-19.) 20 C.F.R. § 404.1529(c)(1). Substantial evidence supports the ALJ's determination that Keffer's statements of extreme limitations due to pain were not entirely credible.

### ALJ's Evaluation of Dr. Bayliss's Clinical Assessment of Pain

Keffer argues that the ALJ erred when he gave little weight to Dr. Bayliss's "Clinical Assessment of Pain." It is unclear when Dr. Bayliss drafted this clinical assessment as the form is undated.[2] In the assessment, Dr. Bayliss noted that pain was "present to such an extent as to be distracting to adequate performance of daily activities or work." (R. 366.) In the narrative, he stated, "[w]hile detailed functional capacity evaluation by [physical therapist] could provide [a] more quantitative assessment of her functional status, based on her description of her limitations

---

[1] Indeed, the ALJ considered the medical opinions of the state agency physicians in light of Keffer's statements at the hearing concerning the impact of the rheumatoid arthritis on her hands and feet and her subjective complaints of pain. (R. 19.) The ALJ mitigated his RFC determination based on Keffer's statements by limiting use of her hands and avoiding concentrated exposure to respiratory irritants. *Id.*

[2] Keffer asserts that the assessment was made "on or about February 8, 2012." (Pl.'s Mot. for Summ. Judgment 3.) Keffer does not state how she determined this date and, indeed the date is likely wrong given that the ALJ's decision, which cited the assessment, was made on March 11, 2011.

9

and physical findings, I would conclude that her medical conditions interfere significantly with her ability to work…." *Id.*

The opinion of a treating physician on the nature and severity of a claimant's impairments will only be given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. 404.1527(c)(2). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

The ALJ gave Dr. Bayliss's assessment little weight, because Dr. Bayliss relied primarily on Keffer's description of her physical limitations and that Dr. Bayliss had indicated that a functional capacity evaluation by a physical therapist could provide a more quantitative assessment. (R. 19.) As Keffer argues, Dr. Bayliss also stated that the assessment was based on "physical findings." (R. 366.) Dr. Bayliss did repeatedly diagnose Keffer with active rheumatoid arthritis. However, his records generally do not describe the physical findings, other than Keffer's statements describing her pain, leading to this diagnosis. (R. 267-69.) *See Craig*, 76 F.3d at 590 n.2 (observing that the fact that a physician notes a claimant's subjective complaints does not transform those subjective complaints into clinical evidence). Further, as noted, physical examinations of Keffer, including those performed by Dr. Bayliss, were basically normal and certainly did not show the extremely limited functionality described in the assessment. (R. 237-38, 246, 371, 343.) In addition, the opinions of Leopold Moreno, M.D., and Frank M. Johnson, M.D., state agency physicians, found that Keffer was able to perform a limited range of sedentary work. (R. 19, 290-94, 313-19.) Thus, sufficient evidence supports the ALJ's decision to accord Dr. Bayliss's assessment little weight.

**RECOMMENDED DISPOSITION**

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to the Honorable Samuel G. Wilson, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

Entered: August 20, 2012

/s/ *Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge